FRANK B. COTTON ET AL. v. NOYES RAND.

No. 786.  Decided June 19, 1899.

### 1.  Agency—Terminated by Inconsistent Employment.

A contract by which an agent for several parties accepts an agency inconsistent with such employment and binds himself to a course of conduct inconsistent with the interest of some of the parties formerly represented, terminates, ipso facto, his former agency.  (P. 22.)

### 2.  Same.

An agent for all the shareholders interested in two enterprises contracted with two of such interested parties to act as their agent in dealing with the properties, and to divide with them the compensation, beyond a certain amount, which he might recover for acting as agent for all; such contract was inconsistent with and terminated his former agency for all the shareholders.  (Pp. 22, 23.)

### 3.  Agency—Terminated by Misconduct—Compensation.

Where an agency is terminated by misconduct of the agent, though in some cases his right to compensation is lost, he may recover for past services where they are of a uniform character and the salary may be fairly proportioned by the time of actual service.  (P. 23.)

### 4.  Same.

A contract providing for an agent's compensation by an annual salary, with no other condition than that the principals should not be required to advance same, but that the agent should raise money for its payment by sales of the property or borowing money thereon, did not contemplate performance of his entire work by the agent before receiving compensation, nor call for a forfeiture of his right to partial compensation on termination of the agency by his misconduct.  (P. 23.)

### 5.  Limitation—Agent—Annual Salary Payable from Sales.

Under an agreement that an agent was not to look to his principal for payment, but that his salary, a fixed amount per year, should be paid from sales of, or by borrowing money upon, the property which he was to manage, such stipulation controlled the manner and source of payment, but not the time when the salary fell due, which was at the end of each year; and action for each year's salary was barred in two years from such date of maturity.  (Pp. 24, 25.)

### 6.  Limitation—Amendment—New Cause of Action.

See original and amended pleading alleging a contract which in the last amendment set up a new cause of action, then barred by limitation, the new feature being an allegation that plaintiff's employment as common agent for owners of different properties, as originally declared on, was but nominal as to one of the parties, the substantial agency relating only to the others.  (Pp. 25.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from El Paso County.

Rand sued Cotton and others and recovered judgment.  Defendants appealed and on affirmance of judgment obtained writ of error.

*Millard Patterson* and *W. B. Merchant,* for plaintiffs in error.—The jury should have been instructed peremptorily to return a verdict in favor of all the defendants, as the undisputed testimony showed that if the plaintiff, Noyes Rand, ever had any cause of action against the defendants it was barred by the statute of limitations of two years, and if he ever had any cause of action it was upon a contract radically different

from the one alleged in his petition. Moore v. Steele, 67 Texas, 439; Watson v. McKinnon, 73 Texas, 215; Rowe v. Rand, 12 N. E. Rep., 379; Schlater v. Winpenny, 75 Pa. St., 325; Fayette v. Faisin, 44 Texas, 586; Clark on Contracts, 750; Railway v. Scott, 75 Texas, 84; Case v. Jennings, 17 Texas, 672; Ridgeway v. Ludlam, 7 N. J. Eq., 123; Am. and Eng. Enc. of Law, 2 ed., 1102; Brown v. Hitchcock, 37 Atl. Rep., 292; Litchfield v. McDonald, 28 N. W. Rep., 191; State v. Norton, 61 N. W. Rep., 458; Railway v. Township, 14 Pac. Rep., 271; Williams v. Bergin, 47 Pac. Rep., 877; Machine Works v. Reigor, 64 Texas, 90; Cotton v. Rand, 29 S. W. Rep., 685.

The verdict of the jury is contrary to the evidence, in this: The evidence does not show that Noyes Rand, the plaintiff, served as agent, as alleged in his petition, from October 15, 1882, to April 15, 1893, and the undisputed evidence introduced by the plaintiff shows the contrary, and shows that even if said plaintiff were ever employed as agent, as alleged in his petition, such employment terminated as early as the fall of 1887, and even if, under any circumstances, the plaintiff could be regarded as the agent of the owners of the Cotton addition, or any of them, up to the year 1892, his own undisputed testimony shows that in the month of March, 1892, he, by his own improper and fraudulent conduct, terminated and revoked any agency that may have theretofore existed on his part on behalf of the owners of the Cotton addition, or any of them, in so far as the salary sued for in this petition is concerned.

Whatever name may be applied to the association under the agreement of date December 20, 1880, it was dissolved by the sale of the Dorphley interest to Tays in 1883, or by Tays' death, or by the sale of the Ehrman interest to Schuler in 1887, or the sale by the Tays estate to Crosby in 1887, and its dissolution ipso facto terminated, by operation of law, Rand's agency under any contract that may have been made with the owners in August, 1882. Rowe v. Rand, 12 N. E. Rep., 379; Schlater v. Winpenny, 75 Pa. St., 325; Clark on Contracts, 750; Fayette v. Faisin, 44 Texas, 586. As to effect of sale of one partner's interest: Moore v. Steele, 67 Texas, 439; Watson v. McKinnon, 73 Texas, 215. As to effect of conduct of Rand in making contract with Abney and Coit in 1892: Case v. Jennings, 17 Texas, 672; Ridgeway v. Ludlam, 7 N. J. Eq., 123; 1 Am. and Eng. Enc. of Law, 2 ed., topic "Agency," p. 1102, and cases cited.

The verdict of the jury is erroneous in finding that Frank B. Cotton, William P. Hunt, and Millard Patterson, administrator of the estate of Samuel Coit, deceased, are liable for two-thirds of the salary found to be due to the plaintiff, Rand. If any person was bound to Rand under the contract alleged in his petition, all of the parties interested in the mineral lands in 1882 and all of the parties interested in the Cotton addition in 1882 were bound to Rand, and the jury had no right to find against the defendants, Cotton, Hunt, and Millard Patterson, administrator, for a part of the debt and let the other parties liable go free, and the court erred in authorizing the jury to do so. Furthermore, the jury erred in

apportioning the balance of $2854.62 among Frank B. Cotton, W. P. Hunt, and Millard Patterson, as administrator, and the court erred in authorizing them to do so. The liability of the parties if it existed at all under the contract pleaded by plaintiff was joint. Clark on Con., 604, and cases cited. If several persons make a joint promise, each is liable for the whole debt or liability, but neither is bound by himself. Rev. Stats., art. 1259; Look v. Henderson, 4 Texas, 304; Clark on Con., 555, and cases cited. A release of one joint debtor otherwise than by operation of law discharges all. Clark on Con., 557, and cases cited.

The trial court erred in its charge in authorizing the jury to return a verdict against F. B. Cotton, W. P. Hunt, and Millard Patterson, administrator, after directing the jury to find a verdict in favor of the defendants, Crosby, Schuler, et al., as the undisputed testimony shows that Crosby, Schuler, et al. are bound to Rand for his salary if anybody is bound in this case.

The trial court erred in refusing appellant's special charge number 4. Even if the evidence showed that there was, in 1882, an agreement between Noyes Rand and the other parties interested in the Cotton addition, that he should receive $2000 per year for his services in looking after said Cotton addition, etc., and that it was agreed that he should sell lots and blocks in laid Cotton addition and pay, or take, his salary out of the proceeds, said Rand could not postpone the running of the statute of limitations by failing to sell lots, and the statute of limitations of two years would run against all claims for salary which may have accrued in said Rand's favor up to the time in 1887 when J. F. Crosby purchased an interest in the Cotton addition, if, up to said time, he had the power to sell lots and pay his salary, as already stated, and did not exercise it.

As according to plaintiff's pleading and testimony he had a right at all times to have his salary paid out of a sale or sales of lots, etc., the statute of limitations would run against his claim for salary. Brown v. Hitchcock, 37 Atl. Rep., 292. A party can not extend the time for bringing suit or prevent the running of the statute of limitation against him by his own act. Litchfield v. McDonald, 28 N. W. Rep., 191; State v. Norton, 61 N. W. Rep., 458; Railway v. Township, 14 Pac. Rep., 271; Williams v. Bergin, 47 Pac. Rep., 877.

The trial court erred in refusing the appellant's special charge number 5. Under the contract alleged in plaintiff's petition, he never at any time had the power or authority to give away any part of the Cotton addition, and if during the year 1887 he was the agent of the owners of the Cotton addition and gave away, or attempted to give away to two of his daughters, three lots each, without the knowledge of the persons he represented, intending to deprive the owners of the value of the same, such conduct upon the part of said Rand would at once operate as a revocation of his agency. Case v. Jennings, 17 Texas, 672; 1 Am. and Eng. Enc. of Law, 2 ed., 1102, and cases cited.

The evidence shows that in March, 1892, the plaintiff, Noyes Rand,

entered into a written contract with Samuel Coit and F. W. Abney, by which he agreed to become their agent with respect to the Cotton addition at a salary of $1200 per year, and that it was his intention when he executed said contract to defraud the defendants, Frank B. Cotton and William P. Hunt, or to get an unfair advantage of them respecting their interest in the Cotton addition. Even if in the year 1882, plaintiff, Noyes Rand, made a contract with F. B. Cotton as trustee for himself and other owners of the Cotton addition, by which the said Rand was to act as agent for the different owners of the said Cotton addition, and by which he was to be paid a salary of $2000 per annum, payable out of the net proceeds arising from the sale of the Cotton addition, such conduct on the part of said Rand would forfeit all right that he ever had to be paid out of the proceeds of the sale of the Cotton addition. Case v. Jennings, 17 Texas, 672; 1 Am. and Eng. Enc. of Law, 2 ed., 1102.

The contract of date March 8, 1892, between Noyes Rand and F. W. Abney and Samuel Coit, introduced in evidence by plaintiff, and the contract of date March 21, 1892, between the same parties, introduced in evidence by the plaintiff, would have the effect to revoke and terminate any agency which existed prior to that time upon the part of Noyes Rand, the plaintiff, for the defendants, Frank B. Cotton and William P. Hunt, and if plaintiff, Rand, had any cause of action for salary accruing to him prior to said time, the statute of limitations of two years would commence to run immediately, and inasmuch as the contract upon which the plaintiff, Rand, now sues was not set up in any pleading until the month of July, 1895, any cause of action on account of the facts alleged in the plaintiff's petition would, at the time of the filing of the plaintiff's first amended original petition, in July, 1895, be barred as against the appellants and each of them.

Under the terms of the instrument of date December 21, 1880, in evidence, the trustee, Frank B. Cotton, would have no authority to make a contract such as that on which the plaintiff declares in his petition, and it is incumbent upon the plaintiff in this case to prove either that each of the owners of the Cotton addition acted for himself in making the contract alleged, or that each of them acted through an agent duly authorized to make the same, and unless the jury found that the plaintiff had established by a preponderance of the testimony in this case that all the owners of the Cotton addition made with him the original contract which he claims in his petition, they should have been instructed to find in favor of the defendants.

The trial court erred in refusing appellant's special charge number 12. The undisputed evidence shows that in 1887 J. F. Crosby purchased and had conveyed to him what is known as the Dorphley interest in the Cotton addition, alleged to be one-ninth. The effect of such conveyance to said Crosby was to revoke any agency that the plaintiff Noyes Rand may have had with reference to said Cotton addition made by contract with the previous owners of said Cotton addition, and if at

the time of said purchase by J. F. Crosby there was anything due the plaintiff Noyes Rand as salary under the contract alleged by him in his petition, his right of action after such conveyance to Crosby was complete, and he should have instituted suit for the recovery of what was due him within the period of two years from the date of said conveyance, and as he did not do so, his cause of action, if he ever had any, was barred by the statute of limitation.

The plaintiff having failed to establish by written evidence any lien or charge upon said land in the nature of a lien, the jury should have been instructed to return a verdict as suggested in said special charge, in favor of all the defendants, and should have been instructed that the plaintiff's claim for salary, if he ever had any, was barred by the statute of limitations. Any other kind of a lien than the vendor's (upon land) must be evidenced by writing. Wynn v. Flannegan, 25 Texas, 778; Pannill v. Smith, 1 Posey, U. C., 99, 100; See "Equitable Liens," 3 Pom. Eq. Jur., secs. 1233-1236; Bender v. Zimmerman, 26 S. W. Rep., 973; Bell v. Coffin, 43 Pac. Rep., 861; Stoddard v. Hart, 23 N. Y., 556.

*Leigh Clark, W. M. Caldwell,* and *W. B. Brack,* for defendant in error. Under the agreement of December 21, 1880, under which the Cotton addition was acquired (and certain mines acquired and operated), and the deed under which the Cotton addition was acquired under said agreement, the legal title to the property was placed in Frank B. Cotton for himself and as trustee for his associates, and for Noyes Rand, C. P. Ehrman, and R. W. Dorphley; he had control of the possession and sale of the same without limitation, for the purposes of the agreement, and as a member of the company or association, neither Ehrman nor Dorphley could terminate the trust or association, or the administration of the property by the trustee, by the simple act of a conveyance of their interest to Crosby, Schuler, or anyone else; and this, notwithstanding Ehrman and Dorphley had a vested interest in the property, such as they could convey, or transfer, for behind their right to transfer there were beneficial interests and rights in the same property vested in others, for example, the right to have the property administered by the trustee, which they could not alienate nor destroy, and the rule that the severance of a joint interest revokes the joint agency, invoked by appellants, has no application in this case. Crosby v. Cotton, 24 S. W. Rep., 347; Seymour v. Freer, 8 Wall., 202; Cotton v. Coit, 31 S. W. Rep., 1061; 1 Am. and Eng. Enc. of Law, 2 ed., 1043, note, second paragraph; McFadden v. Murphy, 21 N. E. Rep., 868; Nail Factory v. Corning, 45 Barb., 231; Tenney v. Protective Union, 37 Vt., 64; Tappan v. Bailey, 45 Mass., 529; Polk v. Reynolds, 54 Ind., 449.

The plaintiff was not guilty of any improper or fraudulent conduct such as terminated or revoked his agency in March, 1892; the contract entered into by him at the instance of Coit and Abney, co-owners of the Cotton addition, could not be and was not designed to deprive Frank

B. Cotton individually or as trustee of any right, and even if Rand had acted in bad faith with Frank B. Cotton in making said contracts it would not have had the effect of forfeiting his right to compensation or terminated his agency.

The mere fact of entering into said agreements would not of itself terminate his agency or forfeit his compensation unless he did some act thereunder inconsistent with such agency, and there is absolutely no evidence that the agreements were ever acted upon or that Rand did any act thereunder. Story's Eq. Jur., 204; State v. Galveston City Co., 38 Texas, 35; Keller v. Johnson, 11 Ind., 337; 1 Am. and Eng. Enc. of Law, 1112.

Even if the contract between Coit, Abney, and Rand was improper as against Cotton, and operated as a revocation of Rand's agency, the same was waived and Rand's employment continued; and if not, in no event could such revocation retroact so as to cause a forfeiture for the many years' salary previously earned; neither Cotton nor the other parties interested were injured in any way thereby, nor did Rand fail in any duty as agent of the properties or association by reason thereof, nor could Rand by any act of his, prematurely ripen his cause of action so as to demand payment before it was due under the contract, which was when the Cotton addition was sold. Express Co. v. Trego, 35 Md., 47; 13 Am. and Eng. Enc. of Law, 721, note 1, 691.

Cotton's associates under both agreements were the same, and Cotton, as trustee for the association, held the legal title to the Cotton addition and dominion over it, and he and his associates were bound to furnish necessary moneys for purchases and expenses; and the Rand side of the December agreement had and have no interest under this agreement except in the profits, and hence not necessary parties defendants. Chase v. Bank, 89 Texas, 316; Van Houten v. Pine, 36 N. J. Eq., 133.

The undisputed evidence shows that Cotton as trustee for the association was alone authorized to make deeds or contracts, and that neither Rand nor any of his associates could make any contract by virtue of their contingent interests in the profits, and in the absence of fraud they were bound by the consequence of any contract or expense incurred, not directly but indirectly and remotely as such contract or expenditure would curtail or increase the profits; and hence they were not in legal contemplation joint obligors or joint contractors as those terms usually signify, and therefore they were not necessary parties defendant to plaintiff's petition; and if they were such joint contractors, then the rule invoked by the first counter-proposition under the fourth assignment would be applicable. Chase v. Bank, 89 Texas, 316; Miller v. Sullivan, 89 Texas, 480, which construes articles 1203-1259; Olery v. Brown, 51 How. Prac., 92; 1 Am. and Eng. Enc. of Law, 2 ed., 1056, 1057, 1059, and authorities cited, especially under second paragraph, note 1, p. 1057; Van Houten v. Pine, 36 N. J. Eq., 133; Polk v. Reynolds, 54 Ind., 449; Manning v. Gasharie, 27 Ind., 399; Goesle v. Bimeler, 55 U. S., 589; Pratt v. Mining Co., 24 Fed. Rep., 869; Gasely v. Society, 13 Ohio St., 144.

By the agreement of December 21, 1880, entered into between the parties thereto and their associates, a voluntary beneficial unincorporated association or company was created or formed; the agreement constituted the organic law of the association, and by it, it was provided that "the title to estates, leases, rights, and interests," acquired by the association should be vested in Frank B. Cotton, as trustee, for the purposes thereof. (For the purposes of the association.)    3 Am. and Eng. Enc. of Law, 2 ed., 162; Bouv. Law Dic.; Abb. Law Dic.; Mills v. State, 23 Texas, 295; Rev. Stats., art. 1223.    The Century Dictionary gives as the meaning of the term:   "Beneficial"—"Contributing to a valuable end; conferring benefit; advantageous; profitable; useful; helpful."    See also "Beneficial Associations," 3 Am. and Eng. Enc. of Law, 2 ed., 1043.    "An unincorporated mutual association is one formed by the voluntary association of its members under the common law right of contract."    Id., par. 3, p. 1055.    When nature of association in question—test—the articles of association revealing the associate purposes are the test.    Id., 1057. "The articles of association, together with the by-laws passed pursuant to such constitution and laws of the land, constitute the rules which must be looked to for the government of the association.    The constitution or articles of agreement of such associations is the fundamental law, to which all who come within its operation must conform.    Id., 1059. "Customs or acts of the parties placing upon the contract a practical construction will be given effect by the courts."    Id., 1082, and authorities under note 3.    Neither the statute nor the policy of this State inhibit such a voluntary association, but article 1223 impliedly sanctions such, the only inhibition being prescribed by article 5313 as to trusts, combinations against trade, etc.    As to the name of the association: Pease v. Pease, 95 Am. Dec., 225.    De facto corporation:    Foster v. Pray, 29 N. W. Rep., 155.    Also 3 Am. and Eng. Enc. of Law, 2 ed., 1047.    We conclude that we have to deal with an unincorporated association or a de facto corporation.

A voluntary association is not dissolved by the secession of one or more of its members, nor by the coming in of new members; hence the association or trust was not dissolved or terminated by the transfer of Dorphley to Tays, or Tays to Crosby, or Ehrman to Schuler. Pitman v. Hodge, 36 Atl. Rep., 605; McFadden v. Murphy, 21 N. E. Rep., 868; Crosby v. Cotton, 24 S. W. Rep., 347; Cotton v. Coit, 31 S. W. Rep., 1064.

The property acquired under the agreement of December 21, 1880, belonged to the association or company formed by said agreement, and while the title to the same was placed in Frank B. Cotton, trustee, for the purposes of said agreement and association, neither Cotton individually nor his associates, nor Rand or his associates, owned any direct interest in the property, for their interests under the agreement or in the association were defined and limited as follows:    "Two-thirds of all the profits arising from such purchases (by the association) to accrue to Frank B. Cotton and his associates; one-third to Noyes Rand, R. W. Dorphley, and their associates."    Hence the fact that Cotton and asso-

ciates advanced the purchase price and expenses would not, as contended by appellants in their second assignment, give them an ownership in the property of the association, but only a right to charge the association and its property with such. Cotton v. Coit, 31 S. W. Rep., 1064; American Silk Works v. Salomon, 4 Hun, 135; Crawford v. Gross, 21 Atl. Rep., 356; Oil Co. v. Densmore, 64 Pa. St., 43; Goesele v. Bimeler, 5 McLean, 223; Altmann v. Benz., 27 N. J. Eq., 331.

As all the parties interested in the association were before the court, and as under the judgment rendered against the association (but in manner and form as stated in the last preceding proposition) the plaintiff was deprived of $7000, found to be due, and the association under the judgment received the benefit of the $7000, the appellants are in no position to complain.

If the appellee is mistaken in his theory of the case as presented in his first general assignment, and the appellants did own the respective interests in the land as found by the jury, then the judgment rendered was absolutely correct. The statute of frauds was not pleaded, and hence waived. Pool v. Schulte, 56 Texas, 299, and cases there cited; Irbacker v. Roth, 49 N. Y. Supp., 538; Crane v. Powell, 34 N. E. Rep., 911; Bowdish v. Briggs, 39 N. Y. Supp., 371. Whole or partial performance referable to a parol agreement will take the case out of the statute of frauds, and the contract was that Rand was to be paid from the proceeds of the sale of the Cotton addition. Castleman v. Sherry, 42 Texas, 59; Ponce v. McWhorter, 50 Texas, 563; Anderson v. Anderson, 36 S. W. Rep., 816; Price v. Sturgis, 44 Cal., 591; Pitman v. Hodge, 36 Atl. Rep., 605.

GAINES, CHIEF JUSTICE.—The defendant in error, Noyes Rand, brought this suit against plaintiff in error, Frank B. Cotton, and others, on the 12th day of September, 1893. He obtained a judgment, which was reversed by the Court of Civil Appeals. Cotton v. Rand, 29 S. W. Rep., 682. The cause was again tried upon a fourth amended original petition, filed May 4, 1898, and again resulted in a judgment for the plaintiff. That judgment having been affirmed by the Court of Civil Appeals, this writ of error has been sued out to reverse it.

The suit was brought to recover a salary alleged to have been earned by the plaintiff as agent under a contract made by F. B. Cotton, for himself and others, and also for certain expenditures claimed to have been made by plaintiff as such agent. The alleged agency grew out of certain joint ventures of the parties to this suit and others in certain mineral and suburban lands. The first venture had its origin in a written agreement entered into in April, 1880, by the plaintiff, Noyes Rand, Francis W. Abney, Richard W. Dorphley, P. B. Delaney, and Clarence P. Ehrman, as parties of the first part, and by defendant Cotton, for himself and others (whose names are not disclosed in the writing), as parties of the second part. The stipulations of that agreement were as follows:

"First. That all options now held by said parties of the first part, or any of them, for the purchase of mineral lands in the State of Texas, as well as all options for such purchases as they may hereafter secure, and any and all such purchases as they may hereafter make, and all mineral lands already located or that may hereafter be located by them, in the State of Texas, shall be for the joint benefit of the parties to this agreement in the proportion of one-half interest to the parties of the second part.

"Second. That said parties of the second part will furnish the necessary amount of money, not exceeding thirty thousand ($30,000) dollars, to pay the cost of such lands as may be selected by the parties of the first part out of any such as are now controlled, or as may be secured hereafter, and that they will send a representative to such point as may be designated by parties of the first part, to examine said lands as soon as so required to do, such representative to be authorized to pay for same as soon as he shall examine and approve of them, and .the proper deeds and titles shall be furnished; said deeds to be made in the name of Frank B. Cotton and Edwin B. Buckingham, as trustees, for the respective parties to this agreement.

"Third. That parties to the second part hereto will pay to the parties of the first part the sum of seventeen hundred and twenty-three ($1723) dollars, to reimburse outlays already incurred by them, including the cost of about six tons of ore now in transit from St. Louis, Mo., to Philadelphia, Pa., which ore shall thereupon become the property of the parties hereto for their joint benefit, such payment to be made upon the execution of this agreement and the delivery of said ore at such point as may be indicated by the parties of the second part hereto.

"Fourth. That the parties of the second part will advance the sum of not exceeding thirty-five hundred ($3500) dollars to meet the cost of outfit and the necessary expenses of their aforesaid representative, and of such of the parties of the first part as may go to Texas to attend to this business, and to pay them for their service in such employment, which advance shall be reimbursed out of the future earnings of this enterprise.

"Fifth. That parties of the second part will furnish such further amount of money as the parties hereto may decide as needed for developing the lands under this agreement, and for carrying out the plans to be hereafter agreed upon by said parties hereto, the entire amount so furnished to be reimbursed out of the net earnings of the enterprise before any dividends shall be declared on the capital stock of the company to be formed as hereinafter provided.

"Sixth. That said parties of the first part agree that Noyes Rand and Francis W. Abney will personally go to Texas at once and attend to the purchase of the lands, as aforesaid, and to carry out the plans of the parties hereto, for the space of three months from date of this agreement, if necessary, receiving as compensation for their service while so employed, two hundred ($200) dollars each per month, besides the cost

of their outfit and necessary traveling and other expenses, and will also secure the services of Clarence P. Ehrman at the rate of one hundred ($100) dollars per month and expenses to assist them; such payments to be met out of the advance hereinbefore provided to be made by the parties of the second part.

"Seventh. That as soon as the parties of the first part shall have secured such lands as they may decide upon, and the deeds therefor shall have been executed and received, a meeting of all the parties hereto, in person or by proxy, shall be held in such place as may be mutually agreed upon, and a company organized under a charter to be obtained under the laws of Texas, or of such other State as may be decided upon, with such an amount of capital stock and of such par value per share as the parties hereto may determine, and directors and officers shall be elected to manage the business of said company, each of the respective parties hereto having an equal representation in the board of directors, but the officers to be of the party of the second part, or such as may be acceptable to them of the parties of the first part; thereupon the titles to all lands that may have been purchased shall be properly vested in said company in due legal form; and full paid stock of the company shall thereupon be issued to the respective parties hereto in the proportion of one-half of the entire capital stock to the parties of the first part, or in such other divisions as the respective parties may agree among themselves.

"Eighth. That all lands that may be located or patented under this agreement shall be assigned to the hereinbefore named trustees by the individual in whose name they are to be located, under a written agreement to be executed at the time of authorization of such location in his name.

"Ninth. It is further agreed that none of the individual members of the respective parties hereto shall directly or indirectly operate in mineral lands or mineral products of the State of Texas, within the district which this agreement is intended to cover, unless by consent of the other party hereto."

The second contract was entered into December, 1880, by F. B. Cotton, of the first part, and Rand and Dorphley, of the second part. Its stipulations are as follows:

"That all purchases of land, leases, mining rights, and interests or real estate in general west of the Mississippi River (not embraced in a certain contract between the parties hereto and their associates, bearing date April 17, 1880), which may be made after November 19, 1880, by either or any of the parties of the second part hereto, or their associates, shall be for the joint account and interest of the parties hereto and their associates and no others, during the continuation of this agreement or any contract that may be executed in accordance with it, said interest to be apportioned as follows:

"Two-thirds of all profits arising from such purchases to accrue to

Frank B. Cotton and his associates; one-third to Noyes Rand, R. W. Dorphley, and their associates. It is agreed and understood, as the conditions upon which this agreement is based, that the necessary funds for making the aforesaid purchases, for meeting the necessary expenses, and for such improvement or developments as may be agreed upon between the parties hereto, are to be furnished or secured by said Frank B. Cotton and his associates. That said Noyes Rand and R. W. Dorphley will attend themselves, or through competent representatives, to securing, purchasing, and getting in proper condition for development, improvement, or sale, as may be agreed upon, any purchase that may be made under this agreement; that the party of the first part and his associates shall not be held to any purchases of leases unless approved by him and his associates, or for a greater sum than $2000 for expenses, unless expressly authorized by him or them, and that the titles to estates, leases, mining rights and interests, shall be vested in Frank B. Cotton, as trustee, for the purposes hereof."

This contract is signed by Cotton, for self and associates, and by Rand and Dorphley.

Under the first contract, more than eighty-seven sections of mineral lands were acquired and were conveyed as provided therein to F. B. Cotton and Edwin B. Buckingham, as trustees. Under the second contract, there was acquired for the parties thereto a tract of 550 acres of land lying adjacent to the city of El Paso, which is known as the "Cotton addition" to that city. The title to this tract seems to have been taken in the name of Cotton, as trustee. Most of the parties to the venture in the mineral lands were also interested in the purchase and sale of the Cotton addition, but there were some parties interested in each who had no interest in the other enterprise.

About the month of August, 1881, Cotton, through a correspondence by mail and telegraph, entered into a contract with Rand, by which he engaged Rand to take the management as agent of the mineral lands and the Cotton addition for the term of one year, and in consideration of his services, agreed, among other things, to pay him the sum of two thousand dollars. The plaintiff Rand claims that before the expiration of the year, the contract, with some modifications, was renewed by a verbal agreement between himself and Cotton. In his original petition filed in this case September 12, 1893, the terms of this latter agreement are alleged as follows:

"That about August, 1882, F. B. Cotton notified him that he was financially embarrassed and would not be able to furnish the necessary means to carry on the operations at El Paso, and would not be able to advance money, etc., and requested plaintiff that he, plaintiff, should continue as agent at the aforesaid salary, and that plaintiff should raise the necessary funds to carry on the business by sales of property out of the Cotton addition, and, if necessary, by borrowing money."

On July 10, 1895, the plaintiff filed an amended petition, in which the averments as to the agreement are as follows:

"That Frank B. Cotton, acting as trustee as aforesaid, and as agent for all persons interested in said two contracts of April and December, 1880, represented to plaintiff that he was financially embarrassed, and notified plaintiff that he would not be able to furnish the necessary means to carry on the operations at El Paso, and would not be able for a time to advance the sums of money that he had promised to advance, and requested plaintiff that he, plaintiff, should continue to act as agent at the aforesaid salary, and that plaintiff should raise the necessary funds, and agreed that the necessary funds should be raised, to carry on the business by sales of property out of the Cotton addition, and, if necessary, by borrowing money, and agreed that plaintiff should be paid his salary out of said property when sold, or as sales of the same should be made from time to time."

The plaintiff filed a second amended petition on the 23d day of December, 1897, in which the terms of the verbal contract are alleged as follows:

"That about August, 1882, the said Frank B. Cotton, acting as trustee, as aforesaid, and as agent for all persons interested in said two contracts, represented to plaintiff that he, Cotton, was financially embarrassed, and notified this plaintiff that he would not be able to furnish the necessary means to carry on the operations at El Paso, as he had theretofore done, and would not be able for a time to advance the sums of money that he had promised to advance by the terms of said contract, and then and there requested of plaintiff that he, plaintiff, should continue to act as agent at the aforesaid salary, but that plaintiff should raise the necessary funds, and agreed that plaintiff should be paid his salary out of said property when sold, or as sales of the same should be made from time to time. And further says that in August, 1882, it was understood and agreed by and between plaintiff and said Cotton, as trustee, that his claim for salary which had then accrued, or which might afterwards accrue, should be payable out of the funds derived from the disposition of lots and blocks or property belonging to or connected with said Cotton addition."

In an amendment, filed April 9, 1898, the terms of the agreement are stated in the following language:

"That about August, 1882, the said Frank B. Cotton, acting as trustee as aforesaid, and as agent for all parties interested in said two contracts, represented to plaintiff that he, Frank B. Cotton, was financially embarrassed; that he could obtain no money from his associates at the time, and would not be able to do so until the patents were obtained for said mineral lands, and notified this plaintiff that he would not be able to furnish the necessary means to carry on the operations at El Paso as he had theretofore done, and would not be able for a time to advance the sums of money that he had promised to advance by the terms of said contract, and then and there requested of plaintiff, as trustee and agent

for all the parties thereto, that plaintiff should continue to act as agent at the aforesaid salary, and that plaintiff should raise the necessary funds, and agreed that the necessary funds should be raised to carry on the business by sales of property out of said Cotton addition, and, if necessary, by borrowing money, and agreed that plaintiff should be paid his salary out of said property when sold or as sales of the same should be made from time to time."

In the amended petition upon which the case was tried the terms of the contract are alleged as follows:

"Plaintiff further says that about August, 1882, the said Frank B. Cotton, acting as trustee and agent as aforesaid for all the parties interested in said two contracts of April 17, 1880, and December 21, 1880, and so represented himself to be such trustee and agent, except for plaintiff, represented to plaintiff that he, Frank B. Cotton, was financially embarrassed, that he could obtain no money from his associates at that time, and informed and notified plaintiff that he would not be able to furnish the necessary means to carry on the operations at El Paso, as he had theretofore done, and would not be able, for a time, at least, to advance the sums of money he had promised to advance by the terms of said contract, and then and there requested of plaintiff, as trustee and agent for his said associates, as well as for all the parties as aforesaid, that he, plaintiff, should continue to act as agent at the aforesaid salary, but that plaintiff should raise the necessary funds, and agreed that the necessary funds should be raised to carry on the business by sales of property out of said Cotton addition, and, if necessary, by borrowing money, and agreed that plaintiff should be paid his salary, then accrued or which might thereafter accrue, out of said property when sold, or as sales thereof should be made from time to time, it being understood that there was no, or but nominal, need for an agent for said mineral lands after the first year as aforesaid, to all of which plaintiff assented."

The defendants Cotton, Hunt, and Millard Patterson, as administrator of the estate of Samuel Coit, answering, denied the making of the verbal contract as alleged, pleaded the statutes of limitation, alleged that if the contract was ever made the plaintiff had by his misconduct precluded himself from recovering anything under it, and also pleaded in effect and reconvention for advances made to Rand and for money received by him as agent from the proceeds of the enterprise.

The contract between Cotton, as trustee, and Rand for the latter's services as agent for the mineral lands and the Cotton addition for one year was proved. It was also proved that Rand continued to act as agent from the expiration of that year until September, 1893. As to the terms of the contract under which Rand served, there was a sharp conflict in the testimony. Rand testified to the contract as alleged in his last petition, while Cotton deposed, that, about the time of the expiration of the first contract, he engaged Rand to continue as agent for certain considerations not necessary to mention in this connection, but notified him that he would pay no salary.

It was also shown by the evidence that in the month of March, 1892, the plaintiff, Rand, entered into two contracts with reference to the mineral lands and the Cotton addition, of which the following are copies:

"Memorandum of an agreement made and entered into this eighth day of March, A. D. 1892, by and between Noyes Rand, of El Paso, Texas, as party of the first part, and Francis W. Abney, of Charleston, West Virginia, and Samuel Coit, of Washington, D. C., for themselves and as assignees of Edwin B. Buckingham, George H. Cotton, and Walter G. Cotton, party of the second part.

"Witnesseth: Whereas, all the parties hereto being interested in certain properties in the State of Texas, acquired and held under the provisions of two certain contracts, one dated April 17, 1880, and signed by Noyes Rand, Francis W. Abney, Richard W. Dorphley, P. B. Delaney, by Richard W. Dorphley, Clarence P. Ehrman, by Noyes Rand, on the one part, and by Frank B. Cotton for self and associates on the other part, and the other dated December 21, 1880, and signed by Frank B. Cotton for self and associates on the one part and Richard W. Dorphley for self and Noyes Rand on the other part.

"Now, therefore, the parties hereto hereby agree to pool their interests, each party to have an equal share of all the interests they now hold or may hereafter obtain in the properties now held under the two contracts hereinbefore mentioned, and all the parties hereto join together for mutual benefit and protection and for this purpose each party hereto binds himself to the other to adopt such course of action in regard to the properties in question as may be mutually agreed upon as such as will be for the best interest of all as well as the properties; for this purpose it is agreed that said Noyes Rand, party of the first part, shall act as the resident partner and agent for all the parties in interest to the extent of the conditions to be hereafter agreed upon, and he, the said Rand, shall receive as compensation therefor the sum of twelve hundred dollars per annum, payable in monthly installments of one hundred dollars each, together with house rent free of charge, and the parties of the second hereto hereby agree and bind themselves to pay the same or to see that the same is paid until such time as the revenue from the properties shall of itself provide for payment of same, and this provision to remain in force until otherwise arranged by mutual consent or agreement.

"It is further agreed by and between the parties hereto, that, as soon as it can be possibly arranged, the possessory control of all the properties held under the two contracts hereinbefore mentioned shall be placed in Francis W. Abney and Noyes Rand, as trustees for the parties hereto, who shall pass title to same to all vendees of any portion or all of same as the case may be. That the property shall be divided off into blocks and lots and prices fixed upon same from time to time, a schedule of such to be given each party in interest, and in case of sales, it shall require the signature of both trustees, in order to pass title, and in case of any

sale at figures at less than the schedule price, the consent of all parties hereto shall be necessary,—monthly statements of all receipts and disbursements to be made by the trustees.

"For the purpose of this agreement, Francis W. Abney shall act as treasurer or custodian of all moneys arising from this venture and disburse the same according to the interests of the parties hereto as may be agreed upon from time to time.

"It is understood and agreed to between the parties hereto that all moneys necessary for legitimate expenses and taxes accrued and to accrue over and above actual receipts from the properties shall be furnished by the party of the second part hereto, but that the same shall be considered in the nature of an advance and shall be returned to the parties of the second part out of the first proceeds from the properties. It is further understood, that, in case this agreement is fully carried out, the said Rand agrees to waive his homestead right to his present place of residence in El Paso, Texas, except in so far as the same may be necessary to protect his two daughters, Ellie Rand Thomas and Florrie Rand Dowley, in and to the three lots he has heretofore given to each within the boundary of said homestead."

"An agreement made and entered into this, twenty-first day of March, 1892, between Noyes Rand, of the city of El Paso, Texas, of the first part, and Francis W. Abney, of Charleston, W. Va., and Samuel Coit, of Washington, D. C., parties of the second part.

"Whereas, said Abney and Coit have agreed between themselves to purchase on their joint account the interests of Edwin B. Buckingham, George H. Cotton, and Walter G. Cotton, of Boston, Mass., in and to certain city, mineral, and other lands situate and in the city of El Paso and in other parts of El Paso County, Texas, acquired under two certain contracts between Frank B. Cotton and others, one dated April 17, 1880, the other December 21, 1880, and in pursuance of said agreement the interests of said Buckingham, Walter G. Cotton, and George H. Cotton have been purchased by said Coit for himself and said Abney, and whereas, the interests held by said Buckingham and said Cottons have been so managed or mismanaged as to be prejudicial to the interests of said Noyes Rand.

"And, whereas, said Abney and Coit purpose furnishing sufficient money to put said lands in a marketable condition and to protect the .same from loss by forfeiture for nonpayment of taxes, and in this way advance the interests of said Rand therein; and

"Whereas, said Rand claims that said properties are liable to him to the extent of about $30,000, including interest to date, for personal services rendered and money advanced concerning same.

"Now, therefore, if the said Abney and Coit, or either of them, shall advance money sufficient for the objects hereinbefore stated and the further consideration of the benefits to be derived by the said Rand from this course of action on the part of said Abney and Coit, the said Rand

hereby agrees and binds himself not to claim as against the interests of said Abney and Coit heretofore owned by them, or those which they may acquire from said Buckingham and Cottons, a greater sum than fifteen thousand ($15,000) dollars.

"And said Rand further agrees and binds himself, his heirs and personal representatives, upon request of said Abney and Coit, their representatives, executors, or assigns, to institute such legal proceedings in the courts of Texas as may be deemed necessary and proper to recover said claim of about $30,000, and that if said proceedings are successful and a greater amount that $15,000 is recovered by said Rand, he hereby agrees, in consideration of said benefits to him accruing, by the course pursued by said Abney and Coit, to divide equally between himself and said Abney and Coit, one-third each, any excess that may be so recovered above the sum of $15,000, as of the date of said recovery.

"And it is further agreed that if said Rand recovers a judgment or decree against said properties or any of them in such proceedings, that he will assign and transfer the same to said Abney and Coit, to be used by them in the purchase of said property ordered to be sold to satisfy the same, if they become the purchasers thereof. And it is understood and agreed by the parties hereto that any judgment or decree obtained by said Rand on said claim against any of said lands shall be satisfied, after the sales, of or from said properties, and if said Abney and Coit use the same in any purchase they may make of said lands, that said Rand will wait until any advance payments of said Abney and Coit on such purchase are satisfied out of the resale of said lands before he shall be paid his said judgment or decree, and from said resales, but said judgment or decree to the amount of $15,000, or whatever less sum it may be, shall bear legal interest from date of said judgment or decree until the same is fully satisfied.

"It is further agreed that the expense of the legal proceedings that may be had under the provisions of this agreement shall be advanced by the said Abney and Coit, and such advance shall come out of the first revenues in any manner derived from said properties."

These contracts speak for themselves. By them, Rand not only contracted for and accepted an agency inconsistent with his former employment, but also bound himself to a course of conduct antagonistic to the interests of all the shareholders in the two enterprises—save the parties to these last contracts themselves. We are clearly of the opinion that such a breach of duty on part of an agent, unless condoned by the principal with a full knowledge of the facts, puts an end, ipso facto, to the agency. The law requires fidelity of agents and holds them no longer capable of representing their principals when, without the knowledge of the latter, they acquire an interest in the matter of the agency adverse to that of their employers. It will not do to say, as has been insisted in this case, that the plaintiff did nothing under the contract. A clerk who had conspired to rob his master's till might as well urge, in order

to defeat the consequences of his misconduct, that, for the lack of opportunity, he had been unable to execute his design. Besides, this suit itself seems the initial step in the prosecution of the scheme evidenced by the contracts in question.

The result being, as we think, that the agreements between Rand, Coit, and Abney terminated Rand's agency, it becomes important to determine what its effect is upon the rights of the parties to this suit. The plaintiffs in error claim that because the agency was terminated by Rand's unfaithfulness and gross misconduct, he lost all right whatever to any compensation as agent. There is a class of cases where such is the result. For example, an agent employed to sell, who makes a sale to a company in which he has an interest, his principal not knowing of that interest, can not claim commissions for the sale, although the sale be in other respects fair and for an adequate price. Salomons v. Pender, 3 Hurl. & C., 639. But there is another class of cases in which it is held that although the agent be discharged for good cause, he may recover for his past services either a proportionate part of his stipulated salary or a compensation for a quantum meruit, not exceeding that sum. Massey v. Taylor, 5 Cold., 447; Lawrence v. Gullifer, 38 Me., 532; Kessee v. Mayfield, 14 La. Ann., 90. The rule is a just one, and should apply whenever the service is of a uniform character and the salary may be fairly proportioned by the time of actual service. There may be other cases in which, for example, the parties contemplate that the agent shall perform his entire work before receiving any compensation and in which he forfeits his agency before the work is completed; in such, probably a different rule would apply, and the agent, especially in case of fraud or bad faith, would be allowed to recover nothing. Murray v. Beard, 102 N. Y., 505; Sumner v. Reicheniker, 9 Kan., 320.

It seems to be the theory of the plaintiff's case, that, as long as the agency continued, the salary did not fall due until sales of the property were made sufficient to pay it after deducting necessary expenses. This contention seems to be necessary in order to meet the plea of the statute of limitations. If it was contemplated by the contract that the agency would not be fully accomplished until the lands were sold, or, in other words, that the sale of the lands was the ultimate end of the agency, we would have difficulty in holding that Rand did not forfeit all right to compensation by entering into the contracts with Coit and Abney. But we hardly think that the agreement between him and Cotton, as alleged by him in his petition and as sworn to in his testimony, should receive that construction. It would seem to call for a continuation of the former salary without any condition, save that Rand himself was to raise the money for its payment, either by sales of the property or by borrowing money upon the credit of the enterprise, and that Cotton should not be looked to to advance it. Our conclusion upon this question is that Rand, by his contracts with Coit and Abney, did not forfeit his right to compensation for his previous services.

This brings us to the question whether the plaintiff's action or any part thereof was barred by the statute of limitations. If the salary became due unconditionally at the end of each year, then so much of it as accrued more than two years before the filing of the petition was in any event barred by the statute. The first contract was for an employment for one year and contained no stipulation for its continuation beyond that period. If, by the verbal agreement, it had been continued for an indefinite period without any modification of the original, then, as we think, the salary would have been payable annually. Rex v. Macclesfield, 3 Term, 76; Davis v. Gorton, 16 N. Y., 255; In re Gardner, 103 N. Y., 533. The terms of the contract, however, were, according to the allegations of the petition and the testimony of the plaintiff, in some respect modified. But the question is, were they modified with respect to the stipulation that the salary was an annual salary and was payable at the end of the year of service? We think not. Neither in his original petition nor in either of his amendments is it alleged that the payment was not to be made at the end of each year. A stipulation for an annual salary, nothing being said as to the time of its payment, implies that it is to become due at the end of the term of service. The theory of the plaintiff seems to be that his salary was not to fall due until a sufficiency of the lands of the Cotton addition were sold to pay that and other necessary expenses. We are of opinion that the allegations as to the terms of the contract in the amended petition upon which the case was tried do not sustain that construction. Very clearly, according to those allegations, Rand was not entitled to look to Cotton for the payment for his services; but it was agreed that the salary should be paid from the sales of the property or by borrowing money, and that, when sales were made, the plaintiff should be paid from their proceeds as they should accrue from time to time. There is nothing in this from which it is to be implied that the salary was not to fall due at the end of each year. It is certain that it is not distinctly averred that in any case the plaintiff's right to demand his salary for the year was to be postponed until the Cotton addition should be sold, though the language employed may possibly admit of that construction. If it were a fact that upon the happening of any event the payment of the salary was not to fall due until the entire sale of the property or of a sufficiency of it to pay the salary and other expenses, no reason is seen why it was not expressly alleged. In such a case, any doubt arising upon the language of the pleading should be resolved against the pleader. The terms of the contract, as specified in the allegations in question, stipulate as to the manner or source of payment, but not as to time when the compensation for services should mature. We recognize the difficulty of the question, but our conclusion upon the point is that, according to the allegations of his petition, the plaintiff, at the end of each year, was entitled to sue for and recover his salary. It results, that, in our opinion, the plaintiff could in no event recover except for the salary for the two years next before

his suit was brought. The question then arises, could he, under the circumstances of this case, recover even for that period? The solution of this question depends upon the further inquiry, whether the amended petition upon which the cause was tried sets up the same cause of action as the original petition. According to the rule which was applied in the case of the East Line & Red River Railway Company v. Scott, 75 Texas, 84, if the contract alleged in either of the amended petitions is different in its material terms from that averred in the original, such amendment states a new cause of action, as to which the operation of the statute is not suspended until such amended petition was filed. The contract sued upon is stated in each of the amendments in somewhat different language from that employed in the original, but it may be doubted whether either of them, except the last, states a contract different in any essential particular from that first alleged. As to the last, however, we are clearly of opinion that it contains an averment of a stipulation not inserted in the allegations of the terms of the contract as they appear in any of the former petitions, and that the stipulation so averred changes the contract in a most important particular. The additional averment referred to is as follows: "It being understood that there was no, or but nominal, need for an agent for said mineral lands after the first year as aforesaid, to all of which plaintiff assented." Now it is to be remembered that Cotton was trustee both of the mineral lands and of the Cotton addition, and, under the first contract entered into between him and Rand, the latter was employed for the term of one year to act as agent of both enterprises. It is to be presumed that the language just quoted was inserted in the last amended petition for a purpose, and we think that purpose was to aver, in effect, that while under the original contract the agency extended to both enterprises, under the new contract, the real substantial agency was to extend to the Cotton addition only, and such, we think, is the effect of the stipulation as averred. The two enterprises were distinct and the parties at interest in the one were not all interested in the other and vice versa; therefore, a contract to act as agent of both is quite different from one to act as agent for but one, which the stipulation, as averred, means, if it means anything. We conclude that the amended petition upon which the case was tried averred quite a different contract from that averred in the original petition or in any one of the previous amendments thereto, and that therefore the statute of limitations, which was set in operation by the contracts entered into by the plaintiff with Coit and Abney in March, 1892, continued to run until the filing of that last amendment in May, 1898.

For the error of the trial court in refusing to instruct the jury that the action was barred, the judgments of that court and of the Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*

## ON MOTION FOR REHEARING.

### Delivered October 23, 1899.

GAINES, CHIEF JUSTICE.—There are two motions for a rehearing in this case,—one by defendant in error Noyes Rand and the other by defendant in error P. B. Delaney. Having considered the motion of Rand, we see no good reason for changing our former opinion and it is therefore overruled.

Delaney was a defendant in the original suit, but in his pleadings disclaimed any interest in the Cotton addition. It seems that he was a part owner of the mineral lands, but no judgment was sought against these lands or against him on that account. The trial court gave judgment in his favor. Presumably he was made a party to the appeal out of abundance of caution. No error was assigned by the plaintiffs in error either in the Court of Civil Appeals or in this court as to the judgment for him. It should have been affirmed. His motion is therefore granted and our former judgment is reformed by setting aside so much thereof as reverses the judgment in his favor, and by affirming the judgment of the trial court and of the Court of Civil Appeals as to him.

*Judgment reformed.*