REED et al. v. HESTER et al.
No. 1504—5795.

Commission of Appeals of Texas, Section A.
Jan. 6, 1932.

Neal A. Brown and Brown & Bader, all of Edinburg, and R. E. McKie and T. G. Oliver, Jr., both of San Marcos, for plaintiffs in error.

Gause & Kirkpatrick, of Mercedes, for defendants in error.

SHARP, J.

O. D. Reed and wife sued T. I. Hester, T. G. Oliver, and R. W. Plant, for the sum of $9,700, and for a writ of injunction to restrain Hester from selling, transferring, or hypothecating five promissory notes for $700, executed by O. D. Reed to Hester in the trade or exchange of land owned by O. D. Reed and wife in Caldwell county and land owned by Hester in Hidalgo county. Reed and wife alleged, in substance, that T. G. Oliver and R. W. Plant were land brokers or agents for T. I. Hester in the exchange and sale of 27½ acres of land in Hidalgo county to the Reeds for a small improved tract in Caldwell county, the Reeds taking the land in Hidalgo county at $9,500 and putting in their property at $6,000 and executing to Hester vendor's lien notes for the difference against the land received by them; that they were deceived and misled by Hester through his agents, Oliver and Plant, in that they represented to them that the land in Hidalgo county was first class citrus fruit land and would grow any of the crops ordinarily grown in the valley, and that they believed and acted on these representations and made the exchange and gave the notes to Hester for the balance, but after they moved down upon the land, shortly after the exchange, they discovered that the

land was so badly water-logged that it would not grow any crops and was not good citrus fruit land and would not grow the ordinary crops grown in the valley, and was practically ruined from water-logging and seepage.

The Reeds further alleged that there was an old barn located on the Hidalgo County property when they purchased same; that after entering into the contract of purchase and before the Reeds moved to said land from Martindale, Tex., T. I. Hester took said barn off said property and appropriated same to his own use and benefit or authorized a third person unknown to them to remove said barn to their damage in the sum of $200.

It is shown that the property the Reeds were to exchange to Hester for his land in Hidalgo county was first conveyed to Hester, but at the request of Hester and his associates the deed was made to Plant and certain vendor's lien notes described therein which retained a vendor's lien against the place for the payment thereof; that the Reeds accepted the deed from Hester to the property in Hidalgo county and moved thereon; that they sued for damages because of fraudulent misrepresentations, etc.

Hester denied that Plant and Oliver were his agents in the sale of the land described and denied that either of them had any authority to represent him in the sale or exchange of the property. Hester, in the alternative, asked for judgment over against Oliver and Plant for any judgment that might be recovered by the Reeds against him. The death of Plant was suggested and he was dismissed from the suit, and a jury having been chosen after the conclusion of the testimony on the part of the Reeds, the court instructed a verdict for T. I. Hester and T. G. Oliver and against O. D. Reed and wife. Reed and wife appealed from this judgment to the Court of Civil Appeals at San Antonio, and that court affirmed the judgment of the trial court. 28 S.W.(2d) 219. The Supreme Court granted a writ of error upon the application of Reed and wife to review the opinion of the Court of Civil Appeals.

Counsel for the Reeds contend that the trial court erred in directing a verdict for Hester and Oliver and against them.

The evidence, in substance, as disclosed by this record, tends to show that Oliver and Plant were real estate agents; that they took O. D. Reed to the Rio Grande Valley and showed him the land owned by Hester and represented to him that the land was good and first-class citrus land and would grow any of the crops ordinarily grown in the valley and was as good citrus fruit land as could be found in the valley; that they could sell him Hester's land for $9,500 and that Hester would take the Martindale property which was the separate property of O. D. Reed's wife in on the sale at $6,000 and take his notes back against the 27½ acres in Hidalgo county

for the balance of $3,500; that Reed was not familiar with the land nor its value in the Rio Grande Valley and relied upon the representations of Oliver and Plant as to its character and quality; that Hester executed the deed to the 27½ acres to the Reeds; that before the deal was closed Oliver and Plant told the Reeds that they had bought the Martindale property from Hester and requested that the deed that had been executed by the Reeds to Hester be destroyed and that a deed be executed by the Reeds conveying the property to Plant; that such deed was executed in which a $4,000 vendor's lien note was described and made to Oliver; that with respect to the transaction regarding the conveyance of Reed's property to Plant, the note described therein was executed purely at the request of Oliver and Plant upon their representation to Reed that they had purchased the property from Hester; that Oliver and Plant concealed from him the seeped and water-logged condition of the land and only showed him a small part of the land and that he was unfamiliar with an irrigation district and knew nothing about that character of land; that after the Reeds moved upon the land they learned that it was so badly seeped and water-logged that it would not grow citrus trees or the usual crops that grow in the valley, and that it was not first-class fruit land. The evidence further shows that the Reeds paid Oliver the sum of $125 as a commission for making the exchange of the lands, and that Hester told Reed that he had to pay a commission out of his $500 to Oliver.

It is further shown that, prior to the time the suit was filed, Reed went to see Hester about getting something done towards adjusting their matters and stated the conditions to him and asked for an adjustment of their differences, but Hester refused and demanded his money, and then the Reeds filed this suit.

The testimony further shows that, after Reed had traded for the land in Hidalgo county, Hester, or some one authorized by him, removed a barn off the premises of the reasonable value of $200.

██ It is a familiar rule that the jury, in the trial of a case, are to find the facts from the evidence introduced. The jury decide upon the weight of the evidence and upon the credibility of the witnesses. The work of the jury is confined to the determination of the ultimate facts which are the subject of the issue. If there is such evidence as would cause reasonable men to draw different conclusions, the case should be submitted to the jury. In other words, it can only become a question of law when the facts and circumstances are such that but one reasonable conclusion can be drawn therefrom. Wininger v. Ry. Co., 105 Tex. 56, 143 S. W. 1150; Daugherty v. Wiles (Tex. Com. App.) 207 S. W. 900, 902; Sigmond Rothchild Co. v.

Moore (Tex. Com. App.) 37 S.W.(2d) 121; Clem v. Fulgham (Tex. Com. App.) 14 S.W. (2d) 812; Ins. Co. v. Kemendo, 94 Tex. 367, 61 S. W. 1102; Lee v. R. R. Co., 89 Tex. 583, 36 S. W. 63; Dashiell v. Johnson, 99 Tex. 546, 91 S. W. 1085.

■ The authorities are in harmony upon the point that a contract for the sale or exchange of land induced by false and fraudulent representations by an agent or the vendor, with reference to the character or condition of the land or the buildings thereon, may be rescinded by the vendee if he acts promptly after ascertaining the facts relative to the deception complained of, or, at his election, he may sue for damages, the measure thereof being the difference between the value of the property as received and what it would have been worth as represented by the agent or broker, and this rule is true, although the vendor did not authorize the making of such representations and had no knowledge that they had been made when the contract was entered into. 7 Tex. Jur. § 13, pp. 395, 396; Sibley v. Southland Ins. Co. (Tex. Sup.) 36 S. W.(2d) 145; see Notes, 57 A. L. R. page 115; article 4004, R. S.

■ An agent is defined as one who undertakes to transact some business or to manage some affair for another by the authority and on account of the latter and to render an account of it. 21 R. C. L. p. 817; 2 Tex. Jur. § 5, pp. 384 and 385.

■■ It is true that Hester denies that Oliver and Plant were his agents in this land transaction, but this is not conclusive. In many instances, agency arises not from the use of express language nor from the existence of a well-defined relation, but from the general conduct of the parties. This relation may exist whether the parties so understand it or not. Agency may be established by circumstances, such as the relation of the parties and their conduct with reference to the subject-matter involved. In the case of Daugherty v. Wiles, supra, Judge Strong states the rule as follows: "It is within the province of the court to determine whether under an ascertained state of facts an agency exists, but it is for the jury to determine the existence of facts sufficient to constitute agency. Bradstreet v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768."

■ The rule is also established that a principal is liable for material and false representations of his agent if he authorized the agent to make them, or if they were made by the agent in the course of his employment, and whether the principal or the agent knew the representations to be false, or believed them to be true, for damages actually suffered, where the representations were intended to and did induce one to purchase property he would not otherwise have purchased. Loper v. Robinson, 54 Tex. 510; Wimple v. Patterson (Tex. Civ. App.) 117 S. W. 1034.

■ There is another familiar rule that, although the Reeds listed their land with Oliver and Plant as real estate brokers, and authorized them to represent them in negotiations for sale or exchange thereof, such authority was automatically rescinded when the brokers embarked on a course of conduct inconsistent with the relationship of principal and agent, and hence notice to the brokers concerning character of land to be received in exchange was not notice to the Reeds. Cotton v. Rand, 93 Tex. 7, 51 S. W. 838, 842; 53 S. W. 343; Binder v. Millikin (Tex. Civ. App.) 201 S. W. 239; Richardson v. Wesley (Tex. Civ. App.) 1 S.W.(2d) 1098.

Chief Justice Gaines, in the case of Cotton v. Rand, supra, states the law to be in the following language: "We are clearly of the opinion that such a breach of duty on part of an agent, unless condoned by the principal with a full knowledge of the facts, puts an end ipso facto to the agency. The law requires fidelity of agents, and holds them no longer capable of representing their principals, when, without the knowledge of the latter, they acquire an interest in the matter of the agency adverse to that of their employers."

The testimony of Hester and Oliver tends to show, we think, that there was some understanding between them with respect to the exchange of lands. It is undisputed that Reed paid Oliver a commission of $125. Hester states that he paid Oliver for his services in making the exchange of the lands, and the land owned by the Reeds was conveyed to Plant, Oliver's associate or partner in this suit, and the notes executed in favor of Oliver with a vendor's lien against the property to secure their payment. Oliver states that Hester had not stated the matter truthfully to Reed that he had not received $500 out of the deal. Oliver, in a vague and indefinite manner, leaves the impression that Hester was not telling the truth, and they did not clear up this part of the testimony. Thus, the testimony is left in this condition by Oliver and Hester. Of course, if Oliver and Plant were not the agents of Hester at the time the representations about the land were made, and had no authority from Hester to represent him at the time of negotiating the deal, then Hester would not be liable for the fraudulent representations made by Oliver and Plant to the Reeds or either of them. If, however, with Hester's knowledge and consent, Oliver and Plant were acting for him in making this land deal, then Hester would be liable for the representations made by them. Richardson v. Wilson (Tex. Com. App.) 213 S. W. 613. (opinion adopted and

entered as the judgment of the Supreme Court).

 We think that the correct view is that Oliver and Plant were not the common agents generally of the Reeds and Hester, but that they acted in different capacities for each. The Reeds had listed their property with them for sale or exchange and the evidence also tends to show that Hester had listed his with them. They were the agents of Hester in the sale or exchange of his property, and any statements or representations with reference thereto made to the Reeds by them, or either of them, were in furtherance of their authority to sell or exchange his property, and he should be held bound thereto.

The evidence in this case raises the issue that Oliver and Plant made fraudulent representations to the Reeds with respect to the character and condition of the land received by them from Hester, which were relied upon by the Reeds, and we think this issue, together with the issue of Oliver and Plant's agency, and also the further issue of the reasonable value of the barn which went with the place, and which, without his authority, was removed, should have been submitted to the jury.

We therefore recommend that both the judgments of the Courts of Civil Appeals and the trial court be reversed, and this cause remanded to the district court for another trial, in accordance with this opinion.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.