FT. WORTH & R. G. RY. CO. v. BIRD.*
(No. 8590.)

(Court of Civil Appeals of Texas. Ft. Worth. April 21, 1917. Rehearing Denied May 26, 1917.)

1. MASTER AND SERVANT ⬦259(4)—ACTION FOR INJURIES—STATUTE.

A petition in an action for death of a railroad engine inspector due to the negligence of a fellow servant to the defendant's knowledge in leaving explosive oil in a receptacle to which deceased had resorted in order to fill a lamp or torch stated a cause of action under Rev. St. 1911, art. 4694, stating when actions for injury resulting in death may be brought.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 840.]

2. LIMITATION OF ACTIONS ⬦127(15)—TRIAL AMENDMENT—CONSTRUCTION—STATEMENT OF NEW CAUSE OF ACTION.

In an action under Rev. St. 1911, art. 4694, for the death of a railroad engine inspector due to the negligence of a fellow servant in storing explosive oil in receptacles to which deceased had resort, a trial amendment filed more than two years after the commencement of the cause of action, seeking for the first time to recover under Employers' Liability Act, April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1916, § 8657), and alleging that prior to such time plaintiff had not known that the deceased was engaged in interstate commerce, set up a new cause of action which was barred by the two-year statute of limitations, under the federal Employers' Liability Act and the Texas statute, since under the Texas statute plaintiff would not have been entitled to recover for injuries proximately caused by the negligence of a fellow servant, but under the federal Employers' Liability Act such defense was not available, and hence the defense in the two causes of action were not the same, and there was a clear departure from the differing laws of one sovereignty to those of another.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 545.]

3. COURTS ⬦97(5)—DECISIONS OF OTHER COURTS AS CONTROLLING — FEDERAL EMPLOYERS' LIABILITY ACT.

In an action brought under the federal Employers' Liability Act, constructions given the act and proceedings thereunder by the federal court are controlling.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 332.]

4. MASTER AND SERVANT ⬦256(1)—INJURIES TO SERVANT—PETITION—CONSTRUCTION.

In an action for death of a railroad engine inspector, allegation of the petition that the defendant company "was a part of the F. system" was not sufficient to point out the fact that the deceased was employed in interstate commerce, in the absence of allegations that the engines which defendant was under duty to inspect were engaged or about to be engaged or had just been engaged in the transportation of commerce to or from the state of Texas, or that such engines had at any time been engaged in interstate commerce or were intended for such use in the future.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 809.]

5. MASTER AND SERVANT ⬦256(1)—INJURIES TO SERVANT—PETITION—CONSTRUCTION.

In an action for death of a railroad engine inspector, allegation that the defendant was a part of the Frisco System did not sufficiently point out the fact that deceased was employed in interstate commerce, where the allegations showed that the defendant was a distinct legal entity, without showing the details of its connection with the Frisco System or that its function in such system is to furnish instrumentalities or transportation in interstate commerce, or that the deceased was at the time of the injury resulting in his death actually engaged in interstate commerce.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 809.]

Error from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by Mary Bird against the Ft. Worth & Rio Grande Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and rendered.

Lockett & Rowe, of Ft. Worth, for plaintiff in error. McLean, Scott & McLean and Odell & Turner, all of Ft. Worth, for defendant in error.

CONNER, C. J. Appellee, as executrix, recovered a judgment for the sum of $3,500 as damages for the death of her husband, Joseph Bird. The trial and judgment was under the federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, c. 149 [Comp. Stat. 1916, § 8657]). Both by exception to the petition upon which the trial proceeded and by plea, the appellant presented the two-year statute of limitation prescribed by the act referred to, and whether this plea was well taken is the vital question presented on this appeal.

Upon the original institution of the suit, which was on March 21, 1913, the plaintiff sued in her individual capacity for herself and for the use and benefit of Walter C. Bird and Mrs. Joe B. Hines, children of the plaintiff and the said Joseph Bird. In the original petition as then instituted the allegations, omitting all averments not necessary to an understanding of our conclusions, were that:

"The defendant is a railway corporation, duly incorporated under the laws of the state of Texas, and constitutes part of the system of railway lines known and designated as the St. Louis & San Francisco Railway Company of Texas, and also as the Frisco System, which said Ft. Worth & Rio Grande Railway Company owns and operates a line of road into and through the county of Tarrant."

It was further alleged:

That Joseph Bird was an employé of the defendant company, and that while "engaged as an engine inspector and in the work of getting engines in proper condition to be carried out of said yards, and in the performance of said work, it was necessary for him to use a torch for the proper performance of his work, and in order that he might be able to thoroughly inspect all parts of the engines under his care."

It was further charged:

That while engaged in the performance of his duty of inspecting engines in the yards of

the defendant, and while using a lamp or torch provided for his use by the defendant, "said lamp * * * exploded, and by said explosion he was terribly burned about the head, face, body, and limbs, internally and externally, and from the effects of. which he died soon after said explosion."

It was further alleged:

That the "said explosion was occasioned by reason of improper oil, or other liquid, being put in said lamp for the purpose of furnishing light, and that said improper material so placed in said lamp or torch was put there and was there without the knowledge of Joseph Bird; that said lamp. or vessel in which said material was placed should have been filled with what is known in the railroad service as signal oil, that being a nonexplosive oil; that, instead of said quality of oil being put in said lamp or vessel, an explosive oil had been put there, through the negligence of defendants and some of its employés, without the knowledge of said Joseph Bird, and which said improper explosive oil caused the explosion which was the proximate and direct cause of Joseph Bird's death."

Plaintiff further alleged:

That she was not "informed or advised as to what particular kind of explosive oil was in said lamp at the time of said explosion, but she alleges that it was an explosive oil and dangerous and improper for said use, and its preseace in said lamp or vessel was the result of gross negligence upon the part of defendant and its employés who caused and permitted said, explosive oil to be put in said lamp or vessel."

The negligence alleged was charged to have been the proximate cause of the death of Joseph Bird.

On April 15, 1914, the plaintiff filed her "first trial amendment," amending her "original petition." The trial amendment purported to set forth with greater particularity than had theretofore been done the manner in which the alleged injuries arose. It was charged:

That while in the discharge of his duty, it "became and was necessary for the deceased * * * to refill" the lamp he was using with oil, to the end that he might have light, and that in refilling the torch it "was the custom, and customary with the deceased and others, to go to lockers kept in the roundhouse of the defendant for its various employés, and in said lockers it was and had been the custom for a long period of time to keep coal, kerosene, or signal oil for the purpose of being used in refilling torches to afford light," which oil "was always of a nonexplosive character, such as coal, kerosene, and signal oil"; that, while in the exercise of ordinary care and, prudence for his own safety, it was the custom of the deceased when the oil in his torch became low or exhausted to go to the locker to refill his torch, and that on the occasion in question, his torch became so exhausted, and thereupon, as he was accustomed to do, he "went to one of the lockers kept by the defendant and by its employés for that purpose, where was a can of oil, and where such can of oil and oil to replenish torches was usually and ordinarily kept, and while undertaking to fill his torch from said can of oil so kept, and while in the belief that same was coal, kerosene, or signal oil and oil of a nonexplosive character, he, the deceased, undertook to refill his torch, and did refill the same, wholly or in part, from said can of oil so kept."

It was then alleged:

That the can of oil out of which deceased was undertaking to fill his torch "was an explosive oil of an exceedingly dangerous character, wholly improper for use in connection with torches, lanterns, or lights, being as these plaintiffs believe, gasoline, or some other equally dangerous and highly explosive character of oil."

It was accordingly charged:

"That the defendant, its servants and employés, were guilty of negligence and gross negligence in placing or causing to be placed in said oil can kept in said lockers, as aforesaid, said gasoline or other highly explosive or dangerous character of oil, and that this negligence on the part of the defendant, its servants and employés, in keeping, or permitting to be kept, said oil can in said lockers containing said dangerous and explosive oil as aforesaid, was the direct and proximate cause of the injuries resulting in the death of deceased, but for ·which said accident would not have happened, and the damages herein sued for have been occasioned to plaintiffs."

The record discloses no further action in the case necessary to notice until on April 17, 1915, when the plaintiff filed an amended petition for the first time asserting the right of recovery as administratrix of the estate of Joseph Bird, deceased. In this amendment it is alleged:

"That plaintiff filed this suit, as shown by her original petition, on the 21st day of March, 1913; that in the defendant's first amended original answer filed in this cause on the 15th day of April, 1914, it was suggested by defendant, and by the pleadings for the first time, and for the first time known to plaintiff, that the deceased, Joseph Bird, was engaged in interstate commerce at the time of his injury; that said facts were not known to plaintiff prior to said time, but the same were and had all of the time been well known to the defendant."

It was then further alleged that thereafter the plaintiff had made application to the county court of Tarrant county, and on the 3d day of June, 1914, had been appointed administratrix of the estate of Joseph Bird, and that the plaintiff had in all things qualified as such. The further allegations of the. amended petition, which was the one upon which the trial proceeded, were substantially as in previous pleadings of the plaintiff, except that it was further alleged:

That at the time of the accident and injury to Joseph Bird the deceased "was engaged, as was also the railway company, in interstate commerce," wherefore "plaintiff brings this suit under and in conformity with an act of Congress of April 22, 1908, and the amendments thereto, commonly known, and referred to as the federal Employers' Liability Act."

[1, 2] The irresistible conclusion, as it seems to us, to be drawn from the pleading of the plaintiff filed prior to her amendment of April 17, 1915, is that her action was brought under the Texas Statute (Revised Statutes 1911, art. 4694) as it existed and was construed prior to the amendment by act approved April 7, 1913 (General Laws 1913, p. 288). If, therefore the amended petition of the plaintiff filed April 17, 1915, amounted to an abandonment of her original cause of action, and to the setting up of a new and distinct cause or right of recovery, it is clear that the defendant's plea of limitation was well taken. For in such case, under the federal Employer's Liability Act, the plaintiff's cause was barred two years from

the death of deceased, which was, as alleged and shown, on October 11, 1911, and this in effect is conceded by appellee. By statute our courts' are permitted to authorize the amendment of pleadings upon such terms as the court may prescribe, but it is not always easy to determine just when an amendment sets up a new cause of action. On this subject our Supreme Court, in the case of Lumber Co. v. Water Co., 94 Tex. 456, 61 S. W. 707, says:

"Four tests are laid down by which to determine the identity of causes of action: (1) Would a recovery had upon the original bar a recovery under the amended petition? (2) Would the same evidence support both of the pleadings? (3) Is the measure of damages the same in each case? (4) Are the allegations of each subject to the same defenses? · 1 Am. & Eng. Enc. of Pleading and Practice, p. 556. We are of opinion that the second and last furnish the best tests by which to determine tne matter before us, and we can safely say that, if the same testimony would not support the allegations in each of these pleas, and if the same defenses could not be interposed to each of them, they are not identical, and therefore the amended petition presents a new cause of action"—citing McLane v. Belvin, 47 Tex. 493; Bigham v. Talbot, 63 Tex. 271; Railway v. Pape, 73 Tex. 502, 11 S. W. 526; Railway v. Scott, 75 Tex. 84, 12 S. W. 995; Boyd v. Beville, 91 Tex. 439, 44 S. W. 287; Cotton v. Rand, 93 Tex. 24, 51 S. W. 838, 53 S. W. 343; Whalen v. Gordon, 95 Fed. 314, 37 C. C. A. 70; Scovill v. Glasner, 79 Mo. 449.

In the case of Union Pacific Ry. Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983, the Supreme Court of the United States in considering whether an amended petition presented a new cause of action, said:

"The legal principles by which this question must be solved are those which belong to the law of departure, since the rules which govern this subject afford the true criterion by which to determine the question whether there is a new cause of action in case of an amendment. In many of the states which have adopted the Code System great latitude has been allowed in regard to amendment; but even in those states it is held that the question of what constitutes a departure in an amended pleading is nevertheless to be determined by the rules of common law, which thus furnish the test for ascertaining whether a given amendment presents a new cause of action even although it be permissible to advance such new cause, by way of an amendment."

The court thereupon quotes from Coke upon Littleton, Comyn's Digest, Stephen, Gould, Sanders, and Chitty on Pleading, all giving definitions or illustrations of what constitutes a departure in pleading. The following quotations from Chitty and Stephen on Pleading will illustrate the authorities cited by the court: Thus Chitty says:

"A departure may be either in the substance of the action or defense or the law on which it is founded; as if a declaration be founded on the common-law, and the replication attempt to maintain it by a special custom, or act of Parliament."

Stephen thus states the principle:

"These, it will be observed, are cases in which the party deserts the ground, in point of fact, that he had first taken. But it is also a departure, if he puts the same facts on a new ground in point of law; as if he relies on the

effect of the common law, in his declarations, and on a custom in his replication, or on the effect of the common law in his plea, and a statute in his rejoinder."

A consideration of the cases cited constrains us to hold that the amended pleading of the appellee in this case filed on April 17, 1915, set up a new cause of action which was barred by the two-year statute of limitation, not only, as stated, by the federal Employers' Liability Act, but also under the Texas statute on the · subject. Considering the plaintiff's original petition and all amendments prior to the one upon which the trial proceeded, it seems evident that the plaintiff sought to maintain her action under the Texas statute as it existed prior to the amendment of 1913; for in all previous pleadings the negligence of the appellant company in permitting the storage of explosive oil in receptacles to which the deceased resorted is relied upon. It was alleged, in substance, that the negligent storing of such oil was known to the appellant company, and that it constituted negligence to so permit the explosive oil to be stored, and the plaintiff particularly alleges in the amended petition, as we have shown by the quotation therefrom, that prior thereto she had been without knowledge of the fact that the deceased was engaged in interstate commerce. This allegation makes it evident that the pleader in framing the original pleadings did not rely upon, nor have in mind a resort to, the federal Employers' Liability Act. Unquestionably, therefore, both by the test as given by our own Supreme Court and by the rule as applied and illustrated by the Supreme Court of the United States in the decision that we have cited, the plaintiff's amended petition upon which the recovery was had set up a new cause of action. Upon the trial of the case it was distinctly shown by the evidence that the can of explosive oil, sufficiently shown to be gasoline, out of which the deceased was attempting to replenish his lamp at the time of the explosion, was placed in the locker to which the deceased repaired for the purpose by a fellow servant. There was and is no evidence sufficient to support the conclusion that such can of gasoline had been placed in the locker by any agent or employé of the railway company having control and whose negligence could be said to be the negligence of the master, nor is there any evidence that such can of gasoline after having been placed in the locker by a fellow servant of deceased had remained there for such time and under such circumstances as to authorize the conclusion that the defendant company, or any alter ego thereof, either knew, or in the exercise of ordinary care ought to have known, the fact that the gasoline had been so stored. The evidence also wholly fails to show any other occasion upon which gasoline had been found in the lockers to which the inspectors or employés were in the habit of resorting for the purpose of replenishing their lamps. On the

contrary, the evidence shows that the particular can used by the deceased at the time was seen for the first time, and that only by another fellow servant of Joseph Bird's, so far as the record shows, on the evening of the day before and on the morning preceding the accident. In brief, the evidence wholly fails to show negligence chargeable to appellant under the Texas statute and decisions. It thus appears that under our statute and the original allegations and the evidence the defendant would have had a perfect defense, to wit, that the negligence which proximately caused the injury and resulting death of Joseph Bird was not that of the defendant, but of fellow servants. Under such pleadings and evidence the plaintiff would not have been entitled to recover, but this defense of negligence on the part of the fellow servant was not available under the federal Employers' Liability Act; that act specifically creating a liability for injuries caused by the negligence of a servant as well as for those caused by the negligence of the master. It thus clearly appears that the amended pleadings and the previous pleadings were not subject to the same defenses, and that there was a clear departure of pleading from the differing laws of one sovereignty, the state, to those of another, the United States.

We are not unmindful of the cases of M., K. & T. Ry. Co. v. Sallie C. Wulf, 226 U. S. 570, 33 Sup. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134, and Seaboard A. L. R. Co. v. Renn, 241 U. S. 290, 36 Sup. Ct. 567, 60 L. Ed. 1007. In the first of these cases it was held, in substance, that a mere change of capacity on the part of plaintiff to sue would not bar the plaintiff's right to recover, the plaintiff having first sued in her individual capacity, and more than two years thereafter having by amendment attempted to prosecute her suit under the federal Employers' Liability Act as executrix. It was held, as stated, that the amendment was permissible; that it related back to the time of the institution of the original suit so as to prevent the toll of the statute. In so ruling, however, the court, among other things, said:

" * * * Aside from the capacity in which the plaintiff assumed to bring her action, there is no substantial difference between the original and the amended petitions. In the former, as in the latter, it was sufficiently averred that the deceased came to his death through injuries suffered while he was employed by the defendant railroad company in interstate commerce, that his death resulted from the negligence of the company and by reason of defects in one of its locomotive engines, due to its negligence, and that, since the deceased died unmarried and childless, the plaintiff, as his sole surviving parent, was the sole beneficiary of the action. It is true the original petition asserted a right of action under the laws of Kansas, without making reference to the act of Congress. But the court was presumed to be cognizant of the enactment of the Employers' Liability Act, and to know that, with respect to the responsibility of interstate carriers by railroad to their employés injured in such commerce after its en-

actment, it had the effect of superseding state laws, upon the subject [citing cases]. Therefore the pleader was not required to refer to the federal act, and the reference actually made to the Kansas statute no more vitiated the pleading than a reference to any other repealed statute would have done."

The court further observed that:

The change in pleading was "in form rather than in substance [citing cases]. It introduced no new or different cause of action, nor did it set up any different state of facts as the ground of action, and therefore it related back to the beginning of the suit [citing cases]."

The case of Seaboard A. L. R. Co. v. Renn, supra, was an action of an employé of a railroad company to recover from the latter for personal injuries suffered through its negligence. The court in the statement of the case says that:

"The original complaint was exceedingly brief, and did not sufficiently allege that at the time of the injury the defendant was engaged and the plaintiff employed in interstate commerce."

After the expiration of two years, the plaintiff was permitted to amend his petition so as to state distinctly the defendant's engagement and the plaintiff's employment in such commerce. The court says:

"If the amendment merely expanded or amplified what was alleged in support of the cause of action already asserted, it related back to the commencement of the action, and was not affected by the intervening lapse of time [citing cases]. But if it introduced a new or different cause of action, it was the equivalent of a new suit, as to which the running of the limitation was not theretofore arrested."

As to this the court then says:

The "original complaint set forth that the defendant was operating a line of railroad in Virginia, North Carolina, and elsewhere; that the plaintiff was in its employ; that when he was injured he was in the line of duty and was proceeding to get aboard one of the defendant's trains; and that the injury was sustained at Cochran, Va., through the defendant's negligence in permitting a part of its right of way at that place to get and remain in a dangerous condition."

As to this the court then says:

"Of course, the right of action could not arise under the laws of North Carolina when the causal negligence and the injury occurred in Virginia; and the absence of any mention of the laws of the latter state was at least consistent with their inapplicability. Besides, the allegation that the defendant was operating a railroad in states other than Virginia was superfluous if the right of action arose under the laws of that state, and was pertinent only if it arose in interstate commerce, and therefore under the act of Congress. In these circumstances, while the question is not free from difficulty, we cannot say that the court erred in treating the original complaint as pointing, although only imperfectly, to a cause of action under the law of Congress. And, this being so, it must be taken that the amendment merely expanded or amplified what was alleged in support of that cause of action, and related back to the commencement of the suit, which was before the limitation had expired."

We should also perhaps notice one of our own cases, viz. that of the Ft. Worth Belt Ry. v. Jones, 182 S. W. 1185, not cited by any of the parties herein. That case as originally instituted arose under Revised Statutes, art..

4694, requiring allegation and proof of neg-ligence on the part of the master, as contra-distinguished from that of a fellow servant, and more than two years thereafter an amended petition was filed for the first time setting up negligence on the part of a fellow servant, because of which, under another Texas statute (Revised Statutes, art. 6640), the master was liable. With much difficulty we held that the amendment did not set up a new cause of action. But by a reading of the opinion it will be seen that it was established by the verdict that the cause of action did not arise under the federal Liability Act, and that in our ruling we merely and hesitatingly followed Texas decisions, which could only involve a construction of Texas statutes and procedure.

[3] The case now before us, however, with-out dispute, is one founded on the act of Con-gress, and constructions given the act, and of proceedings thereunder, by the federal courts, are controlling.

[4] We have referred with perhaps un-necessary particularity to the strongest cases upon which reliance can be had in support of the judgment, but, as it seems to us, these cases are all distinguishable from the one we now have under consideration. It will be observed that in our conclusions we place no reliance upon the mere fact that the appellee in this case, by her amendment, merely changed the capacity in which she sued. The only expressions in appellee's original plead-ings relied upon as "pointing out" what she alleged in her amended petition, and which upon the trial was conceded to be the fact, that the deceased was engaged in interstate commerce, are the allegations of the char-acter of the deceased's employment, and that the defendant company, the Ft. Worth & Rio Grande Railway Company, incorporated un-der the laws of the state of Texas, constitut-ed a "part of the system of railway lines known and designated as the St. Louis San Francisco Railway Company of Texas, and also known as the Frisco System." There is no allegation that the engines, to inspect which it was the duty of the deceased to do, were engaged or about to be engaged, or had just been engaged, in the transportation of commerce to or from the state of Texas, or that at any time such engines ever had been engaged in interstate commerce, or were in-tended for such use in the future. Nor is it alleged that the railway line of the defendant company extended beyond the limits of the state of Texas. The allegations that the de-fendant company was part of the Frisco System by no liberality of construction, as it seems to us, can be held to sufficiently "point" to the fact that the deceased was employed in interstate commerce. It was certainly not so intended, as we have before mentioned, and the allegations as a whole are consistent with a right to recover under the state law, and in-

consistent with the right to recover in the capacity sought under the federal Employers' Liability Act, and fully sufficient to anticipate and defeat the defense arising from the facts as developed on the trial that the death of deceased was caused by the negligence of a fellow servant.

[5] Moreover, the allegations show that the defendant railway company has a distinct legal entity of its own. In what way or un-der what circumstances, or agreements, if any, it operates as a part of the Frisco Sys-tem, is not suggested in the pleadings. We cannot, therefore, say from the allegations that its function in the system is to furnish instrumentalities or transportation in inter-state commerce, and certainly cannot say that the deceased at the time of the injuries resulting in his death was then actually en-gaged in interstate commerce so as to entitle his legal representatives to recover under the federal Employers' Liability Act. That it must be so shown even in cases where it is affirmatively pleaded that the carrier is en-gaged in interstate commerce must be con-ceded by a consideration of the authorities relating to the subject. See Richey's Federal Employers' Liability, Safety Appliance Acts (2d Ed). § 34 et seq., and the recent case of Raymond v. Chicago, M. & St. P. R. Co. by the Supreme Court of the United States, and pub-lished in the Advance Sheets of April 1, 1917, 243 U. S. 43, 37 Sup. Ct. 268, 61 L. Ed. ——, with the United States cases therein cited.

On the whole, therefore, we conclude, as be-fore indicated, that the defendant's plea of limitation is sustained by the record, and that accordingly the judgment below must be re-versed, and here rendered for appellant. This conclusion renders it wholly unnecessary for us to consider other questions presented in the record.

Judgment reversed, and here rendered for appellant.