PD-1636-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/5/2015 9:01:53 AM
Accepted 2/6/2015 2:46:45 PM
ABEL ACOSTA
CLERK

No. PD-1636-14

# In the
# Court of Criminal Appeals of Texas

WALTER DEMOND,
*Petitioner,*

v.

THE STATE OF TEXAS,
*Respondent.*

On Petition from the Third Court of Appeals at Austin, Texas

## REPLY TO PETITION FOR DISCRETIONARY REVIEW

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney
General

SCOTT A. KELLER
Solicitor General

DUSTIN HOWELL
Assistant Solicitor General
State Bar No. 24050169

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-0826
Fax: (512) 474-2697
*dustin.howell@texasattorneygeneral.gov*

COUNSEL FOR THE STATE

FILED IN
COURT OF CRIMINAL APPEALS

February 6, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF JUDGES, PARTIES, AND COUNSEL

### Trial Court Judges
The Honorable Dan Mills
The Honorable Bert Richardson (by assignment)[1]
424th District Court, Blanco County

### Counsel for Petitioner Walter Demond
*Counsel in This Court*
James C. Ho
Kyle Hawkins
Prerak Shah
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, Texas  75201
*jho@gibsondunn.com*

*Counsel in the Court of Appeals*

James C. Ho
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, Texas  75201
*jho@gibsondunn.com*

Daniel L. Geyser
MCKOOL SMITH
300 Crescent Court
Suite 1500
Dallas, Texas  75201
*dgeyser@mckoolsmith.com*

*Trial and Additional Appellate Counsel*

E.G. (Gerry) Morris
LAW OFFICE OF E.G. MORRIS
608 W. 12th Street, Suite B
Austin, Texas  78701
*egm@egmlaw.com*

Warren L. "Rip" Collins
MINTON, BURTON, BASSETT &
  COLLINS
1100 Guadalupe Street
Austin, Texas  78701
*rcollins@mbfc.com*

---

[1] Judge Richardson ruled on the disqualification and recusal issues.

i

***Counsel for the State***

*Counsel in This Court and the Court of Appeals*
Dustin M. Howell
Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
*dustin.howell@texasattorneygeneral.gov*

*Trial Counsel*
Harry E. White
Tom Cloudt
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 048)
Austin, Texas 78711-2548
*harry.white@texasattorneygeneral.gov*

## TABLE OF CONTENTS

Identity of Judges, Parties, and Counsel.....................................................i

Index of Authorities............................................................................iv

Argument............................................................................................1

    I.    Legally Sufficient Evidence Supports Petitioner's Misapplication-of-Fiduciary-Property Conviction..................2

    II.    Petitioner's Public-Policy Arguments Have No Merit............4

Certificate of Service .......................................................................14

Certificate of Compliance................................................................14

# INDEX OF AUTHORITIES

## Cases

*Bender v. State,*
No. 03-09-00652-CR, 2011 WL 1561994 (Tex. App.—
Austin Apr. 19, 2011, pet. struck) (mem. op., not
designated for publication)..................................................................5

*Clayton v. State,*
235 S.W.3d 772 (Tex. Crim. App. 2007)...........................................3

*Cotton v. Rand,*
51 S.W. 838 (Tex. 1899)....................................................................6

*Demond v. State,*
No. 03-11-00553-CR, 2014 WL 6612510 (Tex. App.—
Austin Nov. 21, 2014, pets. filed)...................................2, 4, 6, 7, 8

*Ieremia v. State,*
No. 08-00-00380-CR, 2002 WL 1939154 (Tex. App.—El
Paso Aug. 22, 2002, pet. ref'd) (not designated for
publication)........................................................................................5

*Jackson v. Virginia,*
443 U.S. 307 (1979). ..............................................................2, 3, 5

*Matchett v. State,*
941 S.W.2d 922 (Tex. Crim. App. 1996) (en banc)..........................2

## Statutes

TEX. PENAL CODE § 32.45(a)(2)...............................................................2

TEX. PENAL CODE § 32.45(b). ..................................................................2

TEX. PENAL CODE § 32.45(c)(7). ..............................................................9

TEX. PENAL CODE § 7.01(a). ...................................................................3

TEX. PENAL CODE § 7.02(a)(2). ..............................................................3

TEX. PENAL CODE § 7.03(2). ................................................................12

**Rules**

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.12(a). ....................................6

TEX. R. APP. P. 9.4(i)(1). .....................................................................14

TEX. R. APP. P. 9.4(i)(2). .....................................................................14

TEX. R. APP. P. 66.3. ............................................................................1

TEX. R. APP. P. 66.3(a). ........................................................................1

TEX. R. APP. P. 66.3(b). ........................................................................1

TEX. R. APP. P. 66.3(d). ........................................................................1

To the Honorable Court of Criminal Appeals of Texas:

Texas Rule of Appellate Procedure 66.3 lays out the considerations this Court undertakes when deciding whether to grant a petition for discretionary review. These include whether the court of appeals' decision (1) conflicts with a decision of another court of appeals, (2) decides an important question of state law that should be settled by this Court, or (3) misconstrues a statute. TEX. R. APP. P. 66.3 (a), (b), (d). Petitioner invokes these provisions at the outset of his petition, PDR 2-3, but he fails to meaningfully address any of them. Instead, he reurges the same legal-sufficiency arguments that he asserted below and that the court of appeals correctly rejected. This Court, therefore, should deny Petitioner's petition for discretionary review.

## ARGUMENT

Contrary to Petitioner's hyperbolic assertions, the court of appeals' holding does not set "frightening," PDR 8, or "dangerous precedent[]," *id.* at 1, with "severe consequences for the Texas business community," *id.* at 11, that should "worry every attorney in Texas," *id.* at 2. The court of appeals considered the evidence and concluded that the inferences the jury drew were reasonable and legally sufficient to

support the elements of misapplication of fiduciary property. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In so doing, the court below correctly declined Petitioner's invitation to reweigh the evidence and "sit as a thirteenth juror" in his case. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996) (en banc). This Court should do the same.

## I. LEGALLY SUFFICIENT EVIDENCE SUPPORTS PETITIONER'S MISAPPLICATION-OF-FIDUCIARY-PROPERTY CONVICTION.

Though Petitioner was also guilty of misapplication of fiduciary property as a primary actor, the court of appeals focused on Petitioner's guilt as a party to Bennie Fuelberg's misapplication. *Demond v. State*, No. 03-11-00553-CR, 2014 WL 6612510, at *6 (Tex. App.—Austin Nov. 21, 2014, pets. filed). An individual commits the offense of misapplication of fiduciary property if he "misapplies property he holds as a fiduciary . . . in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held." TEX. PENAL CODE § 32.45(b). The statute defines "misapply" as "deal[ing] with property contrary to: (A) an agreement under which the fiduciary holds the property; or (B) a law prescribing the custody or disposition of the property." *Id.* § 32.45(a)(2). And an individual is

2

guilty as a party to an offense "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

Petitioner devotes the entirety of his petition to making public-policy arguments for why his conduct should not be considered criminal. None of these has merit, as explained below. Petitioner ignores, however, the actual question decided below, *i.e.*, whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319). The evidence the jury heard from almost forty witnesses over a nine-day trial more than supports the limited scope of a legal-sufficiency review. On this evidence, the jury could have reasonably concluded beyond a reasonable doubt (1) that Fuelberg held PEC property as a fiduciary, (2) that Fuelberg and Petitioner intentionally and knowingly subjected that

3

property to a substantial risk of loss by funneling it to Fuelberg's brother (Curtis) and the son of a PEC board member (Bill Price) through arrangements in which they knew PEC would receive little or no benefit, and finally (3) that Petitioner's role in the scheme—utilizing his law firm to make these sham hires—made him guilty as a party to Fuelberg's misapplication. *Demond*, 2014 WL 6612510, at *7-11.

## II. PETITIONER'S PUBLIC-POLICY ARGUMENTS HAVE NO MERIT.

Petitioner lays out a parade of horribles that he contends will inevitably follow if the court of appeals' decision is left to stand. None of these arguments has any basis in law, and none provides any reason for the Court to grant discretionary review.

1. Fuelberg's authority does not excuse his or Petitioner's criminal conduct. Petitioner argues that Fuelberg's authority to hire and fire whomever he pleased absolved him of any culpability for the scheme in which Curtis and Price were "hired" to do work for PEC. PDR 1, 3-6. There are several problems with this theory.

*First*, Fuelberg's authority was not "unfettered," as Petitioner contends. PDR viii. Fuelberg's employment contract and disciplinary policy prohibited "willful falsification of cooperative records" and

4

"dishonesty, willful damage and/or unauthorized appropriation of cooperative funds or property." Sx 2B; Sx 4. It was reasonable for the jury to conclude that Petitioner, as PEC's attorney, would have been familiar with those provisions. And Petitioner's attempt to bolster his theory by arguing that a "clear majority" of the PEC board testified to Fuelberg's broad authority, PDR 6 n.2, is unavailing. The jury was free to weigh the credibility of the witnesses and accept or reject their testimony accordingly. *Jackson*, 443 U.S. at 319.

In any event, Petitioner has not denied, nor could he credibly, that both he and Fuelberg were fiduciaries who owed PEC a duty to act in its best interests—including a duty to not pay salaries to individuals who did not perform valuable work. Moreover, multiple courts have recognized that an executive's broad authority does not shield him from guilt for misapplication when he acts contrary to the best interests of his company. *See Bender v. State*, No. 03-09-00652-CR, 2011 WL 1561994, at *10-11 (Tex. App.—Austin Apr. 19, 2011, pet. struck) (mem. op., not designated for publication); *Ieremia v. State*, No. 08-00-00380-CR, 2002 WL 1939154, at *10 (Tex. App.—El Paso Aug. 22, 2002, pet. ref'd) (not designated for publication).

5

*Second*, Petitioner's client was PEC, *not* Bennie Fuelberg. *See, e.g.*, 17.RR.135; *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.12(a). When Fuelberg asked Petitioner to participate in his scheme to funnel money to Curtis and Price, Fuelberg was no longer acting in the interest of PEC. Thus, Petitioner's decision to participate was not done on behalf of his client, PEC, but instead on behalf of Fuelberg's personal interests—which were directly opposed to PEC's. *See, e.g., Cotton v. Rand*, 51 S.W. 838, 842 (Tex. 1899).

For this same reason, Petitioner's contention that the court below considered these arrangements unauthorized only because he concealed them, PDR 7, is meritless. As the court explained, the extensive effort Fuelberg and Petitioner undertook to conceal the arrangements—from both the PEC board and from Petitioner's law partners—was strong circumstantial evidence that they knew the board would not approve of them. *Demond*, 2014 WL 6612510, at *9. Petitioner points to testimony that they hid these arrangements to prevent a "'morale issue'" at PEC, PDR 7 n.3, but the jury was free to reject this explanation.

2. Petitioner was not convicted because the jury second-guessed how much Curtis and Price were being paid. The court below, viewing

the evidence in a light most favorable to the verdict, concluded that it was reasonable for the jury to find that Fuelberg and Demond intentionally and knowingly overpaid Curtis and Price for their "services." *Demond*, 2014 WL 6612510, at *11. Regarding Curtis, the jury heard testimony, for example, that he had never been paid more than $4,000 per month as a registered lobbyist, whereas Fuelberg and Demond arranged for PEC to pay him $5,000 per month to serve merely as a "legislative consultant" and instructed him not to register as a lobbyist. 11.RR.92, 104, 108-09, 117, 187. Regarding Price, the jury learned that though he was hired to handle PEC work in the Lampasas area, Petitioner never gave him any PEC work to perform, 9.RR.62, 68, 103-05, and that while his retainer was justified in part because he could be conflicted from being adverse to PEC, 15.RR.98, neither he nor PEC knew that he was retained on the cooperative's behalf and so any alleged conflict would have been impossible to discover, 9.RR.64.

This is not, therefore, a matter of a jury reassessing the value of the services rendered. The jury was never asked, "in your estimation, were Curtis or Price overpaid?" And that was never the State's theory in this case, which was instead that these were sham hires from the

7

beginning that provided virtually no value to PEC. *E.g.*, 9.RR.61-62, 11.RR.37. Viewing the evidence in a light most favorable to the judgment, it was reasonable for the jury to conclude that they were. That *can* be a complex determination, but "juries are required to make such value judgments under the Penal Code, and it is not the Court's place to second-guess the jury so long as its decision is supported by the evidence in the record." *Demond*, 2014 WL 6612510, at *10.

Petitioner's novel position that the Court should adopt a "business judgment rule" as a prophylaxis against jury overreach misses the point for the same reason. PDR 9-10. Cases like this one do not "put[] jurors into the CEO office to make business decisions," PDR 10; they simply ask jurors to determine whether an individual in a fiduciary capacity intentionally exposed his principal's property to a substantial risk of loss. If Petitioner is correct, courts could never uphold a misapplication conviction arising in a corporate environment because, in his cynical view, juries are incapable of understanding "complex business decisions" that are better left to CEOs. PDR 10. Petitioner is wrong. The jury here did not "usurp Fuelberg's role as the architect of PEC's

8

business plan," PDR 10; it convicted Petitioner for being the co-architect of a years-long scheme that deprived PEC of over $200,000.[2]

3. Petitioner is incorrect to say that there was "no evidence" rebutting his testimony that he was unaware of the illegal nature of his conduct. As discussed above, ample circumstantial evidence—particularly the remarkable lengths to which he and Fuelberg went to hide the arrangements from the PEC board and his law partners—demonstrated that he *was* aware.

Petitioner attempts to explain this behavior by noting that lawyers are permitted to rely on instructions regarding how to prepare their bills. PDR 15. What he fails to mention, however, is that the jury heard testimony that, while there *are* legitimate reasons to disguise information on an attorney's bill—*e.g.*, attorney-client privileged matters or confidential matters related to pending mergers or bankruptcies, 11.RR.206-07—the jury also heard testimony that modifying a bill to disguise payments to a general manager's brother or

---

[2] Though this dollar amount might represent a *"de minimis* sum" to Petitioner, PDR 17-18, in the eyes of the Legislature, it is enough to amount to a first-degree felony. TEX. PENAL CODE § 32.45(c)(7).

9

a board member's son would not be the sort of "confidential information" that could legitimately be excluded from a bill, 11.RR.208.

4. The decision below will not "fundamentally alter the attorney-client relationship in Texas," PDR 16, and Petitioner's hypothetical proves the point. Petitioner describes an unused motion to compel as "illustrat[ing] the danger" inherent in the decision below. Because the lawyer in the hypothetical billed his client, at the general counsel's instruction, for a motion that became unnecessary because the matter settled, Petitioner posits that the lawyer, and his client, could be found guilty under the court of appeals' reasoning if a jury later disagrees with the value of the motion. PDR 16-17.

Petitioner again misunderstands the decision below. The court of appeals did not uphold Petitioner's conviction because it believed the jury correctly discounted the value of Curtis's and Price's "services." Instead, it affirmed the conviction because legally sufficient evidence supports the jury's finding that Fuelberg and Petitioner *intended* to deprive PEC of the value of its property—that they knew PEC would not get what it paid for.

10

The absence of any such criminal intent makes Petitioner's hypothetical inapposite. Unlike the attorney in that scenario, Petitioner admitted that he had reason to question Fuelberg's billing scheme at its outset. When Petitioner's first invoice to PEC referenced Curtis by name, Fuelberg instructed Petitioner to remove it. 16.RR.152. Petitioner offered to modify the bill to merely reference a "legislative consultant," but Fuelberg objected to this as well. 16.RR.155. Ultimately, the two agreed that the bills would simply read "for legal services rendered in connection with regulatory and legislative matters," Sx 7, despite the fact that Curtis was not an attorney, 11.RR.32.[3]

When asked about his willingness to hide information from the board, Petitioner simply replied that "[i]t was never intended that Curtis Fuelberg or Bill Price stay secret forever." 17.RR.161-62. When asked why he would keep secret arrangements he knew he would eventually have to explain, Petitioner responded "I mean, explaining something later is different than explaining it up front." 17.RR.162. Petitioner's "it's easier to ask for forgiveness" approach demonstrates

_____

[3] Petitioner now says that Curtis was hired to "provide outside *legislative* services," PDR 5 (emphasis added), contrary to the bills he sent PEC, Sx 7.

11

that he knew the board was unlikely to approve of these arrangements if it knew of them. And it is anything but the typical attorney-client interaction, as Petitioner would have the Court believe.

5. Petitioner claims that his guilt under the law of parties is contingent on Fuelberg's conviction. PDR 12 n.5. Petitioner is wrong. Texas Penal Code section 7.03(2) states that, in a prosecution under the law of parties, "it is no defense . . . that the person for whose conduct the actor is criminally responsible has been acquitted." TEX. PENAL CODE § 7.03(2). Thus, there is no reason, as Petitioner suggests, PDR 19, that the Court should grant review in this case if it chooses to grant Fuelberg's PDR, or that the Court should hold this case in abeyance pending the resolution of Fuelberg's PDR. The *Fuelberg* PDR has no legal bearing on this case. Petitioner and Fuelberg were tried separately and their petitions raise entirely separate grounds (with the sole exception of their disqualification/recusal arguments, which Petitioner relegated to an "unbriefed" issue, PDR xi).

\*    \*    \*

The petition for discretionary review should be denied.

12

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General


/s/ Dustin M. Howell
DUSTIN M. HOWELL
Assistant Solicitor General
State Bar No. 24050169

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-0826
Fax: (512) 474-2697
*dustin.howell@texasattorneygeneral.gov*

COUNSEL FOR THE STATE

13

## CERTIFICATE OF SERVICE

On February 5, 2015, this Reply to Petition for Discretionary Review was served via File & Serve Xpress on:

James C. Ho
GIBSON, DUNN & CRUTCHER
   LLP
2100 McKinney Avenue
Suite 1100
Dallas, Texas  75201
*jho@gibsondunn.com*

Lisa C. McMinn
STATE PROSECUTING ATTORNEY
P.O. Box 13406
Austin, Texas 78711-3046
*lisa.mcminn@spa.texas.gov*

/s/  Dustin M. Howell
Dustin M. Howell

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 2,387 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/  Dustin M. Howell
Dustin M. Howell